UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WORLD WRESTLING ENTERTAINMENT, INC.,

Plaintiff,

vs.

ROBERT WINDHAM, THOMAS BILLINGTON, JAMES WARE, OREAL PERRAS, and VARIOUS JOHN DOE'S

Defendants.

Case No.

## COMPLAINT

Plaintiff World Wrestling Entertainment, Inc. ("WWE") files this Complaint against Defendants Robert Windham, Thomas Billington, James Ware, Oreal Perras and various John Doe's (collectively "Defendants"), averring as follows:

## NATURE OF THE ACTION

1.      By this action, WWE seeks a declaration that claims relating to alleged traumatic brain injuries and/or other tort claims Defendants have threatened against WWE are time-barred by the applicable statutes of limitations/statutes of repose under Connecticut law.

2.      WWE is an integrated media and entertainment company featuring its unique brand of wrestling-based sports entertainment programming.  WWE develops multi-faceted storylines centered around the athletic and entertainment skills and appeal of its talent, and presents that content via the WWE network, broadcast and cable television, online and live events.

3.      WWE has maintained its corporate headquarters in Connecticut since in or around the early-1980s.  Since that time, Connecticut has been and remains the nerve center of WWE's global operations.  All essential corporate functions of WWE — for example, executive

management, marketing, promotion, television production, the WWE Network, video library, accounting, legal, and talent relations — operate out of WWE's Connecticut facilities and all significant corporate decisions of WWE are made in Connecticut.  Historically, WWE talent have come from all over the world.  For uniformity and predictability, WWE's contracts with its talent, known as booking contracts, typically have provided since at least in or around the early-1980s that they are governed by Connecticut law and since at least in or around 1991 that any disputes arising out of or related to such contracts must be litigated exclusively in Connecticut.

4.      Connecticut has a strong public policy against the litigation of stale and fraudulent tort claims, which is reflected in strict statutes of repose that bar tort claims if not brought within three years of the act or omissions complained of, even if a cause of action has not accrued by that time.  C.G.S. § 52-577 and §52-584 both contain repose provisions against untimely tort claims.

5.      Three of the Defendants are former-professional wrestlers who long ago performed for WWE.  Specifically, Defendant Windham last performed for WWE in or around 1986; Defendant Billington last performed for WWE in or around 1988; Defendant Ware last performed for WWE in or around 1999.  Defendant Perras last performed for an entity known as Capitol Wrestling Corporation.

6.      The specifically named Defendants did not complain to WWE regarding any alleged injuries supposedly caused by WWE in the decades since they last performed.  On June 2, 2015, the named Defendants, through an attorney named Konstantine W. Kyros ("Kyros"), out-of-the-blue sent WWE identical letters claiming for the first time that they "were allegedly injured as a result of WWE's negligent and fraudulent conduct" (the "Notice Letters," Exs. A-D).

2

7.      John Doe Defendants are former performers who have not performed for WWE within three years and who have signed, or do sign, retainer agreements with Konstantine Kyros, or any other attorney working in concert with Kyros, to assert tort claims against WWE.

8.      Last year, Kyros began an internet solicitation scheme attempting to recruit persons to serve as plaintiffs in suits against WWE patterned after the cases lodged against the National Football League ("NFL") for alleged traumatic brain injuries ("TBIs"), including specifically Chronic Traumatic Encephalopathy ("CTE").

9.      Kyros has since filed or caused to be filed five separate lawsuits in courts across the country against WWE, including three putative class actions relating to TBIs supposedly sustained by former-WWE performers.  The first was filed on October 23, 2014 in federal court in Oregon styled as *William Albert Haynes, III, individually and on behalf of all others similarly situated, v. World Wrestling Entertainment, Inc.*, 3:14-cv-01689-ST (D. Or.) (the "Haynes Suit"). By Opinion and Order of the Honorable Janice M. Stewart dated June 25, 2015, the *Haynes* suit was transferred to this Court.  Second, Kyros filed the case styled *Evan Singleton and Vito LoGrasso v. World Wrestling Entertainment, Inc.*, No. 5:15-cv-00223 (D. Conn.) (the "Singleton Suit") as a purported class action on January 16, 2015 in federal court in Pennsylvania.  By order of the federal court in Pennsylvania on March 23, 2015, the *Singleton* suit was transferred to this Court.  Third, he brought *Cassandra Frazier, individually and as next of kin to her deceased husband, Nelson Lee Frazier, Jr., and as personal representative of the Estate of Nelson Lee Frazier, Jr., deceased, v. World Wrestling Entertainment, Inc.*, No. 2:15-cv-02198 (W.D. Tenn.) (the "Frazier Suit") on February 18, 2015.  Fourth, to avoid the jurisdiction of the federal court in Connecticut, on information and belief, he caused the case styled *Russ McCullough a/k/a "Big Russ McCullough," Ryan Sakoda, and Matthew R. Wiese a/k/a "Luther Reigns," individually,*

*and on behalf of all others similarly situated, v. World Wrestling Entertainment, Inc.*, No. 2:15-cv-02662-AB-JEM (C.D. Cal) (the "McCullough Suit") to be filed in federal court in California on April 9, 2015.  Fifth, on June 26, 2015, one day after the federal court in Oregon issued an order finding that Kyros had engaged in forum shopping and transferred the Haynes Suit to this Court, Kyros filed yet another suit against WWE in the United States District Court for the Northern District of Texas on behalf of the girlfriend of a former performer, Matthew Osborne, who died in June of 2013.  That suit is styled *Michelle James, as mother and next friend of Matthew Osborne, a minor child and Teagan Osborne, a minor child*, No. 3:15-CV-02146-L in the United States District Court for the Northern District of Texas (the "James Suit").

10.     These lawsuits, in reality, are part of an ongoing scheme by Kyros to troll for and recruit new plaintiffs to file additional strike lawsuits against WWE in multiple jurisdictions to vexatiously increase the cost of defending stale and meritless lawsuits and to avoid the jurisdiction of this Court and the application of Connecticut law to stale and meritless claims.

11.     Emblematic of such a dubious purpose, each of the lawsuits to date assert patently time-barred claims based on false, salacious and irrelevant allegations, which Kyros repeats in each case despite knowing that he is making false allegations.

12.     The complaints in each of the lawsuits echo the same theme alleged against the NFL even though the allegations do not fit when made against WWE.  Specifically, each suit claims that concussive and sub-concussive blows cause a neuro-degenerative disease called chronic traumatic encephalopathy ("CTE"); that the plaintiffs routinely received concussive and sub-concussive blows; that there are certain specific symptoms associated with CTE; that medical and scientific research has existed in the public domain regarding such matters for some

time; and that WWE somehow concealed and/or failed to disclose such publicly-available information published by third parties to plaintiffs.

13.     Additionally, Kyros filed the lawsuits in five different jurisdictions around the country in an effort to avoid the statutes of limitations/statutes of repose applicable under Connecticut law, including four such cases where the plaintiffs had agreed to mandatory forum selection clauses mandating that such suits be brought in Connecticut.

14.     By the June 2, 2015 letters, Kyros has threatened WWE with similar claims on behalf of the specifically named Defendants.  In light of the pending lawsuits Kyros has filed or caused to be filed against WWE, his blatant and now adjudicated forum shopping, and his efforts to avoid the jurisdiction of Connecticut, an actual dispute or controversy exists between WWE and Defendants with respect to whether the TBI-related and/or other tort claims threatened by Kyros in the June 2, 2015 letters are time-barred.

## THE PARTIES

15.     Plaintiff WWE is a Delaware corporation with its principal place of business at 1241 East Main Street, Stamford, Connecticut 06902.  WWE is an integrated media and entertainment company principally engaged in the development, promotion, and marketing of television programming and live arena events, and the licensing and sale of branded consumer products.

16.     Defendant Windham is an individual who resides in Groveland, Florida. Defendant Windham performed for WWE from in or around 1985 through in or around February 1987 under the name "Black Jack Mulligan."

17.     Defendant Billington is an individual who resides in Cheshire, England. Defendant Billington performed for WWE from in or around 1984 through in or around November 1988 under the name "Dynamite Kid."

18.     Defendant Ware is an individual who resides in Collierville, Tennessee. Defendant Ware performed for WWE from in or around 1986 through in or around 1994, with a short-lived return in 1999.

19.     Defendant Perras is an individual who resides in Winterville, North Carolina. Defendant Perras performed for Capitol Wrestling Corp. decades ago.

20.     Defendant John Does are former performers of WWE who have not performed for WWE within the past three years and who have signed, or do sign, retainer agreements with Kyros, or any attorney working in concert with him to assert tort claims against WWE.  On information and belief, Kyros and certain of the former performers he has enlisted in the effort continue to try to recruit other former performers to sue WWE in the hope it will maximize their ability to obtain monies from WWE to settle all such claims instead of incurring substantial defense costs litigating stale and fraudulent claims in multiple jurisdictions around the country.

## JURISDICTION AND VENUE

21.     This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different States.

22.     This Court has personal jurisdiction over each of the Defendants in that, *inter alia*, (i) Windham, Billington and Ware entered into contracts with WWE, formerly known as Titan Sports, Inc., whose principal place of business was in the State of Connecticut, with respect to Defendants' professional wrestling services; (ii) the contracts Windham, Billington and Ware

entered into with WWE provided that they were to be governed by the laws of the State of Connecticut applicable to contracts entirely made and performed therein; (iii) the relationship of Windham, Billington and Ware with WWE was centered in the State of Connecticut; and (iv) Kyros, on behalf of the specifically named Defendants, sent the Notice Letters to WWE threatening tort claims to WWE's corporate headquarters in the State of Connecticut which precipitated the filing of this lawsuit.

23.     Venue is proper under 28 U.S.C. § 1391 in that, *inter alia*, a substantial part of the events giving rise to the claims asserted herein occurred in this District and/or Defendants are subject to the Court's personal jurisdiction on the claims herein.

## FACTUAL BACKGROUND

### Kyros' Improper Solicitation

24.     At least as early as June 2014, Kyros began an Internet marketing scheme to recruit clients to be plaintiffs in a class action lawsuit against WWE which he hoped would replicate the result of the traumatic brain injury ("TBI") class action cases against the National Football League ("NFL").

25.     Among other things, Kyros' website stated: "Our law firm wants to speak to former/retired WWF/WWE wrestlers interested in joining lawsuits being brought against WWE . . . . Our law firm is bringing lawsuits against the WWE on behalf of former wrestlers and their families." This statement was false at the time it was made. No lawsuit, much less multiple lawsuits, had been brought against WWE at the time these statements were made.

26.     Kyros fostered a sense of urgency to the filing of lawsuits against WWE by stating "You have a limited window of time to act as these lawsuits are happening now. Do not wait until it is too late." This statement again was false, as no lawsuit was "happening" at that

time.  Moreover, the stale claims by former-wrestlers who had not wrestled for WWE in decades, like Defendants, already were time-barred.

27.     Kyros further falsely advertised on his website that there was a "WWE Concussions Lawsuit Claims Center."  Once more, this statement was false as there was not then, and is not now, any such thing.

**Bad Faith Filing of the Haynes Suit**

28.     Following his solicitation efforts, Kyros first filed the Haynes Suit in October 2014.  Haynes is a self-admitted drug addict for the last 30 years who admittedly worked as a "drug mule" illegally transporting drugs.  Since agreeing to be a plaintiff, Haynes, with Kyros' knowledge and approval, has attempted to recruit other former performers with promises that there is money to be made by suing WWE, and that they can assist in putting WWE out of business by joining into litigation.

29.     Haynes performed for WWE between 1986 and 1988.  Oregon's statute of repose prohibits suits filed more than ten years after the tortious "act or omission complained of," the same concept set forth in Connecticut's repose statutes.  Kyros completely ignored Oregon's statute of repose in filing the suit because the true purpose was publicity, not the pursuit of legitimate, timely claims.

30.     The Haynes Suit, itself, was part of Kyros' recruitment scheme as he admittedly sought to use the filing of the lawsuit to attract additional plaintiffs to sue WWE.  In a media interview he gave after the Haynes Suit was filed, Kyros admitted that he decided to file the Haynes Suit because he believed Haynes "would be a good candidate to get this suit [against WWE] rolling" and that it was "sort of our opening case."  In a separate interview on NPR,

another attorney affiliated with Kyros expressed the hope that Haynes' lawsuit would "open[] the floodgates" of litigation against WWE.

31.      Additionally, Kyros set up a Google advertising campaign in connection with the filing of the Haynes Suit.  When the search terms "WWE concussion lawsuit" or "billy jack haynes" are typed in Google, the search result calls up an advertisement linking the person doing the search to Kyros' website.

32.      In furtherance of Kyros' recruitment scheme and to maximize publicity, the Haynes Suit was chock full of scandalous, false and impertinent allegations that had no semblance of relevance to Haynes' TBI-related claims, all of which were time barred no later than 1998.  Such allegations were asserted solely to garner media attention, and as a result potential new clients.

33.      For example, TMZ, a celebrity news website, ran a story with the headline "Ex-WWE Wrestler Sues — I GOT HEPATITIS C During Bloody Wrestling Match" which squarely focused on one particular scandalous and impertinent allegation of the complaint.  UPROXX and PerezHilton.com, two widely-followed pop culture websites, ran similar stories that focused on the scandalous and impertinent allegations about Hepatitis C and WWE supposedly encouraging steroid and cocaine use, none of which were pertinent to the stale and fraudulent brain injury claims of Haynes.  Specifically, the UPROXX headline was "Billy Jack Haynes Is Suing WWE For Allegedly Giving Him Hep C" and the story quoted the wholly irrelevant, salacious, and false allegation that WWE supposedly "went out of its way to put wrestlers in danger by encouraging steroid and cocaine use."  Likewise, PerezHilton.com reported that "Wrestler Billy Jack Haynes Is Suing The WWE After He Contracted Hepatitis C!" and that "Billy is alleging

that Vince McMahon's company put wrestlers in danger by hiding important medical information and encouraging steroid and cocaine use."

34.     As would become a pattern, Kyros liberally charged WWE with fraud without complying with the operative rules requiring such charges to be pled with particularity so as to prevent damage to reputation by unsubstantiated fraud charges.  Additionally, Kyros fabricated charges that WWE had concealed the risks of concussions and/or assumed certain duties by the deliberate misrepresentation of testimony and alleged statements.  Those fabricated allegations have been repeated as a staple of every subsequent lawsuit.

35.     WWE advised Kyros of its intention to move for sanctions regarding such pleading violations and to move to dismiss the lawsuit.  Kyros then requested time to file an amended complaint in order to drop the improper allegations and avoid sanctions.  The amended complaint, when filed, did nothing to cure the obvious and insurmountable staleness of Haynes' claims under Oregon's ten-year statute of repose.  Furthermore, Kyros amended the complaint only after the scandalous allegations had garnered significant media attention and attracted more potential plaintiffs.

36.     Kyros' plan to incite media attention and attract better plaintiffs through the filing of the Haynes Suit worked to some degree, as less than three months after filing the Haynes Suit, Kyros filed the Singleton Suit on behalf of plaintiffs who, unlike Haynes, had at least wrestled for WWE in this century.

37.     On June 25, 2015, by Opinion and Order of the Honorable Janice Stewart, the Haynes Suit was transferred to this Court by a decision which found, among other things, that Kyros' multi-jurisdictional filings constituted forum shopping and that Oregon was chosen as one state on "a hit-list" of potential venues.  A copy of Judge Stewart's Opinion and Order is

attached hereto as Exh. E.  Despite this ruling, the next day Kyros continued his forum shopping and pattern of vexatious litigation by filing the *James* case in federal court in Dallas.

**Bad Faith Filing of the Singleton Suit**

38.     In January 2015, Kyros filed the Singleton Suit in the U.S. District Court for the Eastern District of Pennsylvania in violation of mandatory forum selection clauses in the two plaintiffs' contracts with WWE that required the filing of any such lawsuits exclusively in this Court.  The Singleton Suit initially was filed as a putative class action and was identical in all material respects to the Haynes putative class action in federal court in Oregon.

39.     The complaint filed by Kyros in the Singleton Suit again contained multiple fraudulent claims on behalf of both plaintiffs Singleton and LoGrasso, including, but not limited to (a) falsely alleging that WWE "discouraged [Singleton] from seeking additional, appropriate medical help, for example from a neurologist" following an alleged concussion when, in fact, WWE had arranged for Singleton to be treated by at least six different physicians including two neurologists; (b) falsely alleging that WWE cleared Singleton to continue wrestling after sustaining a concussion without adequate rest time when, in fact, WWE never medically cleared Singleton to wrestle after his alleged concussion despite clearance from an independent neurologist who found nothing wrong with Singleton and Singleton never again participated in a wrestling match; and (c) falsely alleging that LoGrasso had residual injuries as a result of  TBIs from his brief stint with WWE without any medical diagnosis of such injuries before filing suit.

40.     After WWE's counsel notified Kyros that both Singleton and LoGrasso had signed forum selection clauses, Kyros refused to withdraw the improperly-filed lawsuit and refile it in Connecticut.  WWE then filed a motion to enforce the forum selection clauses and to transfer venue to this Court.  Kyros did not oppose the motion to transfer, and neither he nor any

of the cadre of lawyers representing plaintiffs offered any justification for not honoring the forum selection clauses.  The order transferring the case to this Court found that plaintiffs "agree[d] the District of Connecticut is an appropriate forum."  Upon being transferred to this Court, the case was assigned to the Honorable Vanessa L. Bryant.

41.    WWE also brought the existence of false allegations in the Singleton Suit to Kyros' attention on January 23, 2015.  He refused to correct those falsities for months, necessitating the expense of trying to prepare a motion to dismiss a complaint with false allegations in it.  Instead, on April 28, 2015, ten days before WWE's response to the complaint was due — and after WWE had incurred considerable expense to draft a motion to dismiss the complaint — he announced that the plaintiffs once again intended to file an amended complaint.

42.    As with the Haynes Suit, the amended complaint abandoned some of the specific false allegations that WWE had brought to Kyros' attention but then asserted other fraudulent claims.  In particular, the amended complaint (a) falsely alleged that WWE's conduct "contributed to [plaintiffs'] untimely death" when, in fact, both Singleton and LoGrasso are still alive; and (b) falsely alleged that "[i]t was not until more than 10 months later that [Singleton] was diagnosed with a traumatic brain injury, including an intracranial hemorrhage."  In fact, a MRI taken after Singleton's alleged injury expressly noted to the contrary:  "[n]o intracranial mass lesion, shift of the midline structures or intracranial hemorrhage is identified."

43.    Even after being specifically advised of the falsity of the allegation that Singleton had an intracranial hemorrhage and the specific medical findings that he did not have such an injury, Kyros has continued to assert as fact that Singleton had such an injury.

44.    In his amended complaint, Kyros also abandoned the class-based allegations from the case.  The abandonment of the class-based allegations was tactical gamesmanship to

circumvent the District of Connecticut's jurisdiction in an attempt to pursue such a class action in another forum lacking a strict repose statute.  To pursue that goal of circumventing this Court's jurisdiction, on information and belief Kyros caused the virtually-identical McCullough Suit to be filed as a purported class action in the U.S. District Court for the Central District of California, and affirmatively concealed, and continues to conceal, his involvement in that case.

45.     Additionally, the claims of plaintiff LoGrasso are time-barred on their face as he last wrestled for WWE in 2007 such that the applicable statutes of limitations/statutes of repose had expired years before the filing of the case in January 2015.

46.     As a result of these and other pleading defects in the amended complaint, in a scheduling conference held on June 8, 2015, Judge Bryant ordered Kyros to file a second amended complaint compliant with the Federal Rules of Civil Procedure within one week, and issued other specific directions to be followed by Kyros.

47.     During the dialogue between the Court and Kyros, he attempted to dismiss the false allegation that plaintiffs in the Singleton Suit were deceased as "scrivener error" he was not aware of despite the obligation imposed on him and all attorneys to have a good faith basis for allegations made in a federal lawsuit.

48.     After stating that the false death allegations were scrivener error, Mr. Kyros stated "But my — my client Nelson Frazier's dead at the age of 43," referring to a former performer who died of a heart attack six years after last performing for WWE.  The Frazier Suit is more fully described herein.

49.     After Kyros referenced the Frazier Suit, the Court stated:

"Does the Complaint reference Mr. Frazier?  Are you going to reference every wrestler that's dead in your Complaint?  I don't – I don't follow that.  You really need to read and get a better grip on the pleading standard in the next week and file an amended complaint."

50.    Less than three weeks after this Court made the above quoted remarks and issued the instructions to Kyros, he again acted to circumvent this Court's jurisdiction and instructions by filing the James Suit in federal court in Texas described herein. That suit was filed the day after the federal court in Oregon found that Kyros had been forum shopping and that the presence of mandatory forum selection clauses in wrestler's contracts justified transferring that case to this Court. As described herein, the deceased former performer in that case — Matthew Osborne — agreed to the same forum selection clause as had LoGrasso and Singleton.

51.    Kyros not only ignored the decision of the Oregon federal court that he had been engaged in forum shopping and the mandatory forum selection clause in Osborne's contract, he did exactly what this Court questioned at the hearing on June 8, 2015 — specifically he listed every dead wrestler and included photographs of them in yet another federal pleading replete with falsehoods.

**Bad Faith Filing of the Frazier Suit**

52.    In February 2015, Kyros caused the Frazier Suit to be filed in state court in Tennessee in violation of the mandatory forum selection clauses in three different contracts between Frazier and WWE requiring the assertion of any such claims in this Court. This lawsuit was filed despite the fact that Frazier was a member of the putative class defined by Kyros in both the Haynes Suit and Singleton Suit.

53.    Frazier was a morbidly obese man who died of a heart attack on February 18, 2014 — many years after he last performed for WWE. At no time prior to his death did Frazier ever make a claim against WWE for alleged TBI's. After his death, he was cremated and no autopsy was performed.

54.     CTE can only be diagnosed post-mortem by an autopsy of the brain involving preparation of tissue slides using specialized staining techniques.  In every complaint filed to date, Kyros has admitted that CTE can only be diagnosed post-mortem.

55.     Following Frazier's death, his widow contacted WWE, claimed she was destitute, and asked for money to avoid being evicted.  To help her financially, WWE advanced her royalties that would otherwise become due to the estate, if at all, in the future.  Thereafter, she broadly praised WWE in social media outlets.

56.     Being destitute, Frazier's widow was receptive to Kyros' pitch to permit her late husband's death to be used as a vehicle to launch TBI lawsuits against WWE.

57.     Substantively, the Frazier Suit alleges that Frazier has CTE and that CTE somehow contributed to his death from a heart attack.  These claims are demonstrably false for at least two reasons.  First, as Kyros knows, it is not possible to prove that Frazier had CTE because it can only be diagnosed by a post-mortem examination of the brain.  Frazier was cremated without any pathological examination of his brain having been performed.  Second, there is no medically-plausible causal connection between CTE and a morbidly obese man with diabetes and hypertension passing away after a heart attack in the shower.

58.     In addition to its lack of substantive merit, the complaint filed in the Frazier Suit again is replete with scandalous and impertinent allegations designed solely for media attention, not legal merit.  For example, just as he did recently in the Osborne Suit, the complaint in the Frazier Suit contains color photographs and allegations about the alleged cause and manner of death of other former wrestlers.  The cause and manner of death of persons no longer affiliated with WWE have nothing to do with whether Frazier's estate has a viable and timely tort claim

against WWE after he passed away from a heart attack in the shower years after he last performed for WWE.

59.     Further, the complaint contains 289 paragraphs identifying every match in which Frazier performed for WWE, extracted from an internet database, followed by the identical boilerplate allegation for each match that "[u]pon information and belief he sustained head and other long-term injuries by participating in this event."  There is no credible basis to assert that Frazier sustained head injuries or other long-term injuries in each and every one of these 289 matches.

60.     Because Kyros refused to transfer the case to this Court, WWE moved to enforce the forum selection clauses and transfer the case to this Court.

61.     After filing the Haynes, Singleton and Frazier Suits, Kyros personally appeared on the March 27, 2015 podcast of a program called "The Wrestling Show" in which he peddled hysteria, falsely claiming "there is an epidemic in the community . . . there is a health crisis in retired wrestlers" that he attributed to WWE and pushed his marketing efforts by stating "I can win a case against WWE if people come forward . . . if every wrestler who believes that they'd been harmed by WWE right now decided to file a lawsuit against WWE, this would surely decide, I think an outcome."

62.     Prior to Kyros' internet marketing scheme, no former performer had claimed to be having a health crisis on account of alleged traumatic brain injuries, as Kyros stated on March 27, 2015.  No such lawsuits had been threatened or filed on behalf of a former performer. Singleton was in the midst of pursuing a Workmen's Compensation claim which he abandoned after being induced to bring suit by Kyros.

**Bad Faith Filing of the McCullough Suit**

63.     The McCullough Suit was filed as a putative class action on April 9, 2015 on behalf of three former performers who last performed in 2001, 2004 and 2005 respectively.  At the time it was filed, the McCullough Suit was entirely duplicative of the Singleton Suit and the Haynes Suit.  The McCullough Suit was filed in the Central District of California in violation of mandatory forum selection clauses in the three plaintiffs' contracts with WWE that require the assertion of any such claims in this Court.  Despite agreeing to transfer the Singleton Suit to Connecticut after WWE pointed out the existence of the forum selection clauses, Kyros, through California counsel he obtained to be on the Complaint, refused to transfer the case to Connecticut despite the fact all three plaintiffs in the California case had also agreed to the same or similar clause.  As a result, WWE was put to the expense of once again having to move to enforce the forum selection clauses and transfer the McCullough Suit to this Court.

64.     The McCullough Suit was filed in the Central District of California to avoid the Connecticut statutes of limitations and statutes of repose that would apply if the case was filed in this Court as required by the forum selection clauses to which the plaintiffs are subject.

65.     On information and belief, Kyros represents the plaintiffs in the McCullough Suit but did not sign the complaint so as to conceal his involvement in the attempt to circumvent this Court's jurisdiction, which he had previously agreed to be appropriate in cases where former performers had signed forum selection clauses.  Instead, he retained local California counsel to sign the pleadings in order to maximize their ability to distance themselves from Kyros' previous agreement to transfer cases to this Court where performers had agreed to identical forum selection clauses.  WWE's counsel has repeatedly requested that Kyros and the plaintiffs'

California counsel confirm or deny Kyros' involvement in the McCullough Suit and representation of those plaintiffs, but they have refused to do either.

66.     In briefings to the federal court in California, WWE pointed out Kyros' role in the attempts to circumvent this Court's jurisdiction.  In their response, the plaintiffs did not dispute his role or comment in any way in furtherance of the scheme to conceal and deceive the federal court in California.

67.     On information and belief, the decision to abandon the class-based allegations in the Singleton Suit was done to try to avoid arguments that the Singleton and McCullough Suits are duplicative in a further effort to resist the transfer of the McCullough Suit to this Court in circumvention of its jurisdiction.

68.     Despite being admonished for not pleading in accordance with the rules of court, and despite previously making the false allegation that one of his clients had died as a result of alleged torts by WWE in the Singleton case, when in fact that client was alive, on information and belief, Kyros has continued the pattern of making similar false allegations in the McCullough case.

69.     On information and belief, on June 22, 2014, while continuing to conceal his role in the case, Kyros caused the California lawyers he retained to oppose WWE's motion to transfer venue back to Connecticut.  In that opposition, it was once again falsely alleged that "WWE failed to disclose the facts and dangers to plaintiffs and caused them irreparable harm and ultimately an untimely death."  All three plaintiffs in that case are alive, not dead, yet the pattern of making such false allegations continue.  Federal pleadings filed by and/or controlled by Kyros have now falsely alleged that either four or five plaintiffs he represents are dead due to torts he accuses WWE of committing, yet all are alive.

70.     Additionally, while attempting to argue that the three plaintiffs in the California case had no opportunity to wrestle elsewhere, the false statement was made in the opposition to transfer that "the WWE is, on information and belief, the only professional wrestling company in the country." Kyros knows this allegation is false. His clients actually performed for other professional wrestling companies in America, and at least two other professional wrestling organizations are on television every week — TNA and Ring of Honor.

71.     The three plaintiffs in the McCullough Suit, Russ McCullough, Ryan Sakoda, and Matt Wiese, last wrestled for WWE in 2001, 2004, and 2005, respectively. Accordingly, their claims each are time-barred on their face as the applicable Connecticut statutes of limitations/statutes of repose expired years before the filing of the case in April 2015.

### Kyros' June 2, 2015 Letters on Behalf of the Specifically Named Defendants

72.     Against the backdrop of the foregoing pending lawsuits, on June 2, 2015, Kyros sent WWE identical "Notice of Representation" letters on behalf of Defendants Windham, Billington, Ware, and Perras directly to WWE's corporate headquarters in Stamford, Connecticut.

73.     The letters state that "the undersigned have been retained by [Defendants Windham, Billington, Ware, and Perras], a former WWE wrestler . . . who was allegedly injured as a result of WWE's negligent and fraudulent conduct." The letters then go on to state that "in light of the possible litigation involving this matter," WWE purportedly should refrain from communicating directly with these Defendants and should preserve relevant data. Thus, these Defendants admit that an actual dispute or controversy exists between them and WWE with respect to WWE's supposedly negligent and fraudulent conduct, and that they "have reasonable anticipation of litigation."

74.     The specifically named Defendants had not complained to WWE regarding any alleged injuries in the decades since they last performed until the June 2, 2015 letters.

75.     The June 2, 2015 letters demand that WWE take action to preserve records which appear to have some relation to the TBI-related cases Kyros has filed against WWE.

76.     The letters also request that WWE preserve records which have no apparent relevance to the TBI-related cases, such as "royalties, accountings licenses, deals, toys, action figures, video games, DVDs [and] streaming videos on the WWE network."  Additionally, the letters demand that "all physical items in the image and likeness of the [specifically named Defendants] should be preserved and have a litigation hold established on them."

**The Events Since Receipt of the June 2, 2015 Letters**

77.     A few weeks after Kyros sent these letters on behalf of the four named defendants, the federal court in the Haynes Suit specifically found that Kyros had been involved in forum shopping.  The Oregon federal court did so while noting that WWE had been unable to get Kyros to confirm his involvement in the McCullough Suit in California.  At the same time, the Court noted that the pleadings in the McCullough Suit had identical allegations and photographs as did the version of the complaint in the Haynes Suit, and concluded it was evidence of forum shopping.

78.     In its order of June 25, 2015, the Oregon federal court also noted that many of the putative class members are subject to mandatory forum selection clauses requiring disputes to be resolved in this Court.  Exh. E, p. 7.  The Court then ordered the Haynes Suit transferred to this Court, and left it to this Court to rule on the fully briefed motion to dismiss the Haynes Suit.

79.     Undeterred by the decision of the Oregon court finding that he had been forum shopping, and which recognized the import of mandatory forum selection clauses, or this Court's

directive that he read and comply with proper pleading standards, Kyros filed the James Suit the next day, June 26, 2015.

80.     The James Suit opens with a false factual premise, and then reiterates the same boilerplate false allegations as Kyros has made in every TBI complaint against WWE to date. The opening false premise is that Matt Osborne "wrestled for WWE beginning in 1985 and ending in 2007." Thereafter, Kyros alleged that "For decades spanning back to the 1920s WWE has known . . . that wrestlers have been subjected to extremely dangerous conditions and blows at its direction."

81.     WWE did not even exist in the 1920s, and Matt Osborne did not perform for WWE from 1985 to 2007, or for twenty years, as is also falsely alleged by Kyros in the Complaint he filed.

82.     Matt Osborne first performed for WWE from 1985-86. He had a second stint performing for WWE from October 1992 until October 1993, when WWE ceased booking him for events due to drug problems he had. After October of 1993, Osborne never performed for WWE again.

83.     On December 10, 2007, WWE sponsored a 15th anniversary show celebrating its flagship RAW television program in Bridgeport, Connecticut. The WWE invited some past performers who had appeared on the show to attend and make a token appearance, and Matt Osborne was one of them.

84.     Between October 1993 and December 10, 2007, Osborne did not appear at or perform for WWE, and did not appear or perform again after his one-time appearance on December 10, 2007.

85.     WWE has a program which offers former performers rehabilitation assistance if they have a drug or alcohol problem.  Matt Osborne requested such help, and WWE paid for rehab for Matt Osborne from February 20, 2008 to May 4, 2008.

86.     On June 28, 2013, Matt Osborne died from an overdose of morphine and hydrocodone, some 20 years after last performing for WWE, and five years after WWE attempted to help him recover from his life-long pattern of substance abuse.

## COUNT I — DECLARATORY JUDGMENT

87.     Each and every one of the foregoing allegations is incorporated herein by reference and reasserted as though fully set forth at length.

88.     None of the named defendants have performed for the WWE within three years of the date this complaint was filed.

89.     The June 2, 2015 letters assert that the named Defendants were "allegedly injured as a result of WWE's negligent and fraudulent conduct."

90.     The June 2, 2015 letters further make certain demands on WWE "in light of the possible litigation involving this matter" and the "reasonable anticipation of litigation."

91.     Thus, an actual dispute and controversy exists with respect to whether Defendants are time-barred from making tort claims with respect to any alleged injuries as a result of WWE's supposedly negligent and fraudulent conduct.

92.     The June 2, 2015 letters demand that WWE take action to preserve records which appear to have some relation to the TBI-related cases Kyros has filed against WWE.

93.     Under Connecticut law, all tort claims are subject to a three-year statute of limitations/statute of repose measured from the act or omission complained of.  *See* C.G.S. § 52-577; C.G.S. § 52-584.

94.     Because no Defendant has performed for WWE since at the latest 1999, an actual dispute or controversy exists as to whether any alleged TBI-related claims or any alleged tort claims based on WWE's supposedly negligent and fraudulent conduct by Defendants are time-barred by the applicable statutes of limitations/statutes of repose under Connecticut law.

95.     On information and belief, Kyros, Haynes, LoGrasso and at least one of the California plaintiffs continue to solicit former wrestlers to contact Kyros and sue WWE to maximize their chances of obtaining monies for time-barred and fraudulent claims.

96.     Discovery will be needed to ascertain the identity of the John Doe Defendants, at which time WWE will seek to amend the Complaint to add each as a named defendant.

97.     The actions of Kyros alleged herein indicate that he will continue his forum shopping to avoid this Court's jurisdiction and continue to file stale and fraudulent claims in other jurisdictions, necessitating the relief sought herein.

98.     Accordingly, a judicial declaration pursuant to 28 U.S.C. § 2201 *et seq.* is necessary as to whether any alleged TBI-related claims or any alleged tort claims by Defendants based on WWE's supposedly negligent and fraudulent conduct are time-barred by the applicable statutes of limitations/statutes of repose under Connecticut law.

## PRAYER FOR RELIEF

WHEREFORE, WWE respectfully requests that this Honorable Court enter judgment in favor of WWE and against Defendants, and order the following relief:

(a)     Declare that any alleged TBI-related claims by Defendants are time-barred by the applicable statutes of limitations/statutes of repose under Connecticut law.

(b)      Declare that any other alleged tort claims by Defendants based on WWE's

supposedly negligent and fraudulent conduct are time-barred by the applicable

statutes of limitations/statutes of repose under Connecticut law.

(c)      Such other and further relief as this Court deems just and appropriate.


**JURY TRIAL DEMANDED**

PLAINTIFF WORLD WRESTLING
ENTERTAINMENT, INC.

By:   /s/ Jeffrey P. Mueller
Jerry S. McDevitt (pro hac vice to be filed)
Terry Budd (pro hac vice to be filed)
Curtis B. Krasik (pro hac vice to be filed)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: terry.budd@klgates.com
Email: curtis.krasik@klgates.com

Thomas D. Goldberg (ct04386)
Jonathan B. Tropp (ct11295)
Jeffrey P. Mueller (ct27870)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-0100
Fax: (860) 275-0343
Email: tgoldberg@daypitney.com
Email: jbtropp@daypitney.com
Email: jmueller@daypitney.com


Its Attorneys.